I'm Timothy Sullivan, Counsel to Appellant, American Auto Logistics. For everyone's benefit and to avoid acronyms, I'll refer to them as American during our time together this morning. This is a bid protest relating to the agency's evaluation of proposals for a contract worth nearly a billion dollars over five years. The contract was awarded by the U.S. Transportation Command, and it covers the shipment of vehicles owned by DOD personnel as they move around the world. This contract requires the contractor to create a complex logistics network. Under the evaluation methodology that was laid out in the solicitation, all five offerors that submitted proposals were deemed acceptable by the agency. And the agency then evaluated their proposals for past performance and price, which were considered to be of equal weight in the award decision in this best value procurement. In other words, the past performance and price. Part of your argument is that this separate corporation, Global Europe, was not identified in the proposal as a separate corporation, correct? Your Honor, it goes beyond that. It wasn't identified at all. We found out over the course of the proceedings at the GAO and at the Court of Federal Claims that it was a separate corporation, but it wasn't identified in the proposal submitted by international... Well, but the proposal did identify their European operations and describe how the people who were going to work on this had worked on the European operations, right? It did, Your Honor. But, Your Honor, the way it described that was branch offices, and it never committed or specified the resources, the personnel, the facilities... Okay, but what I'm trying to get at is does it really make a difference whether it's identified as branch offices or a division or a separate corporation? Is that fatal, that it was not identified as a separate corporation? No, Your Honor, I don't think it is. Even just identifying as branch offices, we have the same problem. They didn't identify... This company has five or six branch offices throughout Europe. They didn't identify which branch office it was going to be, what personnel, what facilities, what resources were going to be committed, and that's the standard that's You're saying the level of detail wasn't sufficient. Yes, Your Honor, that's true. There was no detail. What about the past performance questionnaires? There was detail in those questionnaires, was there not? There was, Your Honor, and one of the details was that these two contracts that were submitted as past performance information on behalf of TGAL was performed by a company that wasn't mentioned in the proposal. That was the problem. And there was nothing in the proposal that mentioned how TGAL, global, trans-global, how they were related to each other, and then there was nothing in the proposal at all that mentioned the relationship between those two on the one hand and trans-global autologistics Europe on the other. Well, is it your argument that you have to have that kind of specificity in the proposal, even where the past performance questionnaires disclose the detail? Yes, Your Honor. The proposal had to lay it out. It never mentioned which branch offices were going to be performing this contract for them in Europe. It didn't at all. And that's what the GAO has required for years. In fact, the agency was well aware of this. In the record, we talk about how they sent out evaluation notices to international saying, let us know. It doesn't look like we don't have a commitment between global on the one hand and trans-global on the other. We need information on that, which they provided. So that was discussed, but not a peep, not a word was addressed to trans-global autologistics Europe. And that's a fatal flaw. Yeah, but on 12,243, it does say that the resources of trans-global logistics, including workforce management facilities and all resources, will be available for contract performance. It does, Your Honor. So if Europe had been a division rather than a subsidiary, what would have been missing there? Your Honor, the point is that that is a very broad description, and GAO has not accepted it over the years. They want to know not just your vast resources, tell us what they are. Be specific. You're writing the proposal. Don't make us guess. And in fact, the importance of this is that it was those two past performance references that were viewed by the source selection official as being the most significant and most critical in support of international's past performance rating. So what you're asking us to do is to say that the contracting officer had to require more specificity than was required, right? We believe there were inadequate discussions in the sense that they didn't ask about trans-global logistics Europe. They asked about the upper levels, but not this one. And we found out, as we say through the course of proceedings, that it was a separate corporate entity. Well, how do you know they didn't ask? I mean, when you say that, it's in the questionnaire responses. Ultimately, GAO and the CFC made findings that, in fact, there was enough information. And you say, well, it wasn't up to them to give TRANSCOM a rationale. Do you concede that had TRANSCOM made those same findings that you wouldn't be here? If TRANSCOM had made those same findings and actually addressed the existence of and the participation of trans-global logistics Europe, we probably wouldn't be here. How could I deny that? But they didn't address it. And the Court of Federal Claims below filled in for them what was missing in the TRANSCOM record, which we think was inappropriate under the APA. That would be our view of this. It really is our view of this. And the fact is, in a billion-dollar procurement, I could see where, blind common sense to it, you'd say, well, it was close enough. I mean, they're vast resources, but the GAO for years, in fact, twice or two or three times since our GAO decision came down denying our protest, has found that the lack of specificity in an offeror's proposal was fatal to that proposal. What case of ours has said that? I'm sorry? What case of ours has set aside procurement for lack of specificity? The Federal Circuit has not addressed this issue with respect to past performance. And in our view, Your Honor, as I believe our briefs make pretty clear, in both the issues that are before the Court this morning, that is the past performance issue and the contract interpretation issue, we believe the Court of Federal Claims reached beyond the record that was before the agency as it made its evaluation decision and found in favor of the agency's action, and that violated DAP right there. They can't fill in the gaps in the agency's record, and that's why we're here today. So you believe that the Court is bound by the record that was developed at TRANSCOM and not necessarily the record that was developed before the GAO? Oh, Your Honor, on that point, absolutely it was bound by the record at TRANSCOM. And with respect to GAO, they're bound by the statutory language, which we shared with the Court in our briefs, but I've got the statute right in front of me. It says that this is 31 U.S.C.A. 3556. In any such action based on a procurement or proposed procurement with respect to which a protest has been filed under this subchapter, the reports required by Sections 3553 and 3554 of this title with respect to such procurement or proposed procurement and any decision or recommendation of the Comptroller General under this subchapter with respect to such procurement or proposed procurement shall be considered to be part of the agency record subject to review. So the reports that are mentioned there are the agency report that they filed 30 days after a protest was filed with the GAO. That's not involved here. And the reports to Congress if an agency doesn't follow instructions, which was not an issue here. The decision that was issued by GAO, Your Honor, as you know, is six and a half single-page pages. They don't go outside the record that was before the agency, not at all. Part of your argument here is that there was a failure to identify Europe as a separate subsidiary as opposed to a division. Why isn't it appropriate to look at post-award material to see whether that failure was in any way prejudicial? Well, Your Honor, first of all, I would take issue with the way you phrased the issue there. They didn't identify trans-global Europe at all really in their proposal. It shows up as a reference, but it was not identified in the proposal part itself. And going outside the record that was before the agency is simply unacceptable under the Supreme Court precedent interpreting the APA. The agency had it in front of them. But I don't think you're addressing my question, which is why can't you look at post-award evidence to see whether the failure to identify it as a separate corporation was in any way prejudicial? Because, Your Honor, it wasn't in front of the agency. It just simply was not. And in terms of prejudicial... I'm still having a hard time. The agency had the questionnaire responses, the past performance questionnaire responses. And in those responses, TCAO Europe was definitely identified, right? In the references, Your Honor. Right. So if we're talking about what was before the agency, why are you saying, well, you can look at what's before the agency, but only the parts we want you to look at? Well, Your Honor, the fact is that it was in there, but they certainly probed the reference between Global and TGAL, Trans-Global Auto Logistics, but they didn't even bother to ask about TGAL-E. They didn't ask, is this one of your branches? Is this one of your divisions? What's the relationship? What's their commitment of resources, the way they did for the upper two echelons? They didn't do it. And yet, those are the two references that are considered the most significant and most critical to the past performance determination, which is where the prejudice is here. This was, the Global Past Performance Reference, was the only relevant reference in all of international stable references. So if that doesn't work for them, then they're probably not going to get the satisfactory confidence rating that they got here. Now you're into limited confidence, and now that past performance trade-off decision is much tougher. It was tough here, trying to figure out whether past performance versus a $38 million differential in price was, what was more important. But this was the entire ballgame for this procurement, and yet not a question was asked about it. With respect to your other issue, how do you articulate in your view the difference between a principal subcontractor and a major subcontractor? Well, Your Honor, first of all, I would start with the RFP itself. The instructions part of the RFP is where the word major came up. Submit past performance information for major subcontractors. Yet when you get into the evaluation section, which is where we are in terms of the evaluation process that we're challenging, it says that they're going to equally weight, if you will, past performance information of a principal subcontractor that performs, Your Honor, I've lost the language, but performs critical parts of the job, and there's another word in there. The court focused only on the word major in the instructions. And yet, as we looked at it, we have a company here who, at best, is going to contribute $3 to $4 million a year in work on roughly a $200 million annual volume. It's a very small percentage, and yet the entire past performance decision is made based on this company's participation. So you're saying that it is a totally quantitative analysis, the amount of money, or can't it be? How important is that particular activity to the overall contract? Your Honor, thank you for that question. That's exactly the argument we've been having between the parties, obviously. We think if you read the RFP as a whole, which we have to do, you have to read the word principal on the one hand, and the other words on the other hand, and give them all some meaning. Principal, we think, goes to the dollar amount. And with respect to the language in the RFP, we believe that the other words go to the, and I'll get the language right here, major or critical aspects. That's the nature of the work. It's all things. It's the dollar amount on the one hand, and the nature of the work. That's what the RFP says. There was no indication in the record that Transcom even looked at that. The fact that someone submits a subcontractor's past performance information doesn't mean that the agency is just simply supposed to roll over and say, okay, it must be a major subcontractor or principal subcontractor. We've got to look at it. But it's still the agency's realm to make the decision as to whether they think they're sufficiently major or sufficiently principal, right? It's within their discretion, Your Honor. And if there had been a discussion of it, and they'd come down on it, that would be one thing. But there wasn't. There's nothing on it. So you think the agency has to spell out every consideration that they make when they do an award? This agency went through a lot of detail in its review of the offerors that came in. What is it that says they have to spell it out? Well, Your Honor, it's a time-honored rule that agencies have to abide by the rules in their solicitation. What's the site to the proposition that they have to address every issue? Well, Your Honor, I can't give you a site to a proposition that says they have to address every issue. But there are countless GAO decisions and claims court decisions that require agencies to abide by the terms of the RFP. And we believe that the words principal on the one hand and the major and critical aspects of the requirement on the other all require addressing here. The numbers simply are too small. But didn't the Supreme Court say that really the role is to attempt to discern what the agency did, not to hold it to a particular set of phrasing in its analysis? True, Your Honor. However, in this case, there's no evidence the agency did anything. Just accepted it and pushed it through. And it's the only way they got to that past performance evaluation and being able to hold international satisfactory confidence. It wouldn't have gotten there without this. Okay. Thank you, Mr. Sullivan. We're out of time. We'll give you two minutes for rebuttal. Thank you, Your Honor. Mr. Nichol. Your Honor, Mr. Sullivan, English. May it please the Court. I'd like to just step back, though, and just really concentrate on what's at issue here. And this is a challenge to the single issue is to a business decision of the contracting officers and their contracting officer team at TRANSCOM. There's been no identification of any violation of statute or regulation. In fact, the regulation is quite broad. Well, why don't you address their contention that there was a lack of specificity as to the European operation? Thank you. Thank you, Your Honor. I will. The record contains several sites. And primarily I'll point to just a couple and go through those. I can give a serial list if the Court would like. But I've asked the Court to first look at A11850. When you say several sites, these are sites that you're talking about the record that was solely before TRANSCOM, not anything to do with the GAO? Yes, Your Honor. I'm sorry. Or CFC? Yes, Your Honor. It's solely before TRANSCOM in the proposal or in the past performance questionnaires that were submitted to the government for review. In their proposal, there are numerous sites. First, I don't think there's any dispute now that GAL, Global Auto Logistics, is the same as TJAL. They're affiliates, sister affiliates. The real issue is, is TJAL-E a separate and distinct entity from TJAL? And was the contracting officer and their team, in the expertise they've developed over the years, somehow required by the RFP or the FAR to delve into the affiliate relationships in some detail of a subcontractor? And in their proposal at A11850, we see, there's three columns on that page. On the far left where it says, GAL, Global Auto Logistics, has submitted past performance questionnaires to three customers. The required information for each past performance reference at POC is included in that figure below. In that figure, they list the three companies. Allied International Serva, which they were a sub, which I call the Canadian Forces. They essentially were doing transportation of POVs for the Canadian Forces throughout Europe. Howe Auto Leasing, Howe Auto Liners, and the second one was VW Logistics. In those past performance evaluation questionnaires that were returned to the government, and that's at 11141 and 11431, specifically, they mention the TGALE. See, for instance, on 111441, that is the performance review submitted by VW, contractor name, Transglobal Auto Logistics Europe. So there was a tie right there. That was part of the proposal. That's part of the proposal package. We consider the past performance evaluation questionnaires returns to be part of the proposal package. And moreover, in the evaluation notice that my friend mentioned... What page is that at again? I'm sorry, sir? What page? Alpha A11441, past performance questionnaire. That's the one provided by VW and GMB and company as agents for the carrier Peter Lamke. And the other page I'd like to cite to you, Your Honor, would be 11431, which is the past performance questionnaire provided for the contract for Allied International. Again, that's the contract I just commonly refer to. You don't dispute that these are really the only references to TGALE, right? No, absolutely not. I don't think we've ever disputed that. So it's in these questionnaire responses, but they're fairly buried here. I mean, there's nothing in the agency's analysis, Transcom's analysis that would actually point to these, right? I don't believe there is. And maybe if I looked at these in my capacity, I might not understand these. But don't forget, we're reviewing the actions of an experienced contracting officer in the Transportation Command who works with these contracts all the time. They obviously didn't have a question. The only question that they had was the question, what's the relationship between GAL and TGAL? And that was when they did the evaluation notice that they sent out. And in the responses coming back at 12241, 12241, TGAL said, we'll assist GAL. I think the court mentioned that they committed the resources in a letter response back to the agency of Transcom. And they basically listed those same contracts as these are the types of contracts we've been performing on that shows that we can actually do this task or complete the effort that Transcom wants. Well, going to where I ended with your friend on the other side, the Supreme Court in Bowen did say the question is whether you can reasonably discern the agency's rationale. But it also specifically said that as a matter of review, the court is not supposed to substitute a rationale or provide a reasoned rationale for the agency. Where do you draw that line? Well, this is, as this court said in Glenn Defense, a past performance review is one of those minutiae of the procurement process. It's one of those decisions that happens all the time. There's really no tests or standards to apply. What did the agency say about past performance when it issued its award? What exactly did it say about it? The agency on past performance is at 12756. And there is a large paragraph. That's by the Source Selection Authority. There was an interim past performance review by a team of contracting officers that looked at it. And for IAL specifically, it's from 12341 to 12351. Wait, wait, wait, you're on too fast. I'm sorry, Your Honor. So this says exceptional performance by IAL subcontractors on two relevant efforts of similar scope and magnitude. That's the reference, right? That's the reference. But it all also flows from the detailed chart that was compiled, not just for IAL, but I believe there was nine major subcontractors that IAL proposed for their teaming effort in this matter. Is this a specific reference to the 11431 and 11441 questionnaire? Not a questionnaire, I'm sorry. The questionnaires are what were cited at 11441 and 11431, the proposal. I would say they were, Your Honor, only because, as my friend said, there was two very relevant past performance contractors or contracts that they thought were very relevant under the definitions in the RFP. And that's what, and those. Where did they identify those two contracts?  Excuse me, Your Honor. Where did the contracting officer identify the two relevant efforts that are referred to here? I'm sorry, Your Honor. I want to say 12356. And it talks about the verification subcontractor, GAL, two sources. And it talks about two people. Wait, wait a second. This is on? Alpha 12356. And at the very top, there's a synopsis of global. What is this document we're looking at? This is an interim source selection. Excuse me. Prepared by the contracting officer. Transcom. It's prepared by Transcom. It was prepared by a team of contracting officers. Right, okay. Specifically, I think it's Alpha 12341, Ms. Chrissy Schneider, and Emily Tiff, who were part of the contracting team. And that is all the review of all the offers. I mean, the argument that my friend makes is that this was all made in a vacuum, and Transcom really could not make the confidence rating they did. But that's just not supported by the record, especially when you consider that it's a decision on past performance. And if we look at what the review only was, they only got a satisfactory rating. And based on the RFP, and that's at 933 and 934, those definitions were, based on the offer's recent and relevant performance record, the government has a reasonable expectation that the offer will successfully perform the required effort. And that's exactly, I mean, nothing more. Because the other one they would have had to do would be a limited, say, low expectation. And there's nothing in the record given IAEL's nine subcontractors that shows there would be low expectations. In fact, all the other offerors of the five all had satisfactory confidence ratings. AAL obviously had exceptional. Let me try to understand what's going on here. If you look at 123.56, and there's this subcontractor, Global Auto Logistics, their contention, if I understand correctly, is that what's listed here in this past performance description relates to GAL Europe, correct? It relates to GAL. But where the tie-in is to GAL Europe, Your Honor, is about halfway down in the middle of that paragraph. There's a sign that says two PPQs were submitted for TGAL, and it talks about Whiskey 6447, blah, blah, blah, and Volkswagen Logistics. Those are the two contracts that were referenced in the initial proposal way back at the start of the process when GAL said, we sent out past performance questionnaires to three contractors that we think can provide you the information that you agency, Transcom, can develop a confidence rating. So these numbers, the W6447, ILEA 0835, that corresponds to 11431, and the Volkswagen Logistics corresponds to 11441. Those are the two questionnaires that expressly refer to TGAL. Those are the numbers, right. If you compare the numbers of W6447, they're on line B at alpha 11431, and the other one is on the other side. Switching to the other issue that the court asked my friend about, and that dealt with what to do with the records of the GAL. First is, I don't know if we need to, we don't know if the court needs to reach that issue because the trial court made a specific finding that she did not rely on those records. She discussed those in her decision. It's an elbow review, isn't it, since it's on the administrative record? It is on the administrative record, Your Honor. And also, too, though, we believe that those records could have been considered by the trial court. Now, if in fact the trial court thought that they presented information that the agency didn't address, we would argue that the trial court would have committed error if it developed its own rationale one way or another, and instead should have remanded. But I think it's time that we talk about what really goes on at the GAO. The GAO is a recommendation. After that recommendation, even after all that information is presented at the GAO, that is all before the agency. The contracting officer at that time or the agency could say, you know, they made some good arguments. Even if the GAO upheld the award, we might want to go back and take a look because, you know, let's tie up that loose end on TGALE. In this case, they didn't. But as I always like to say, sometimes what's in the records is important, but sometimes what's not in the record is important. And if an agency says, well, what you found out or what the information presented at the GAO is what we knew to be the case all along, why would they, you know, write a memo, why would the contracting officer submit a memo to the GAO saying we knew this all along? They didn't have to. By their inaction and the follow-on award and the fact that order IAL to continue performing. Well, the contracting officer apparently at the time wasn't aware that it was a separate subsidiary, right? Is that fair? I don't know if the contracting officer... No, I mean, there wasn't any information in front of the contracting officer that identified it as a separate corporate entity, correct? No, but I think that they assumed... Yes, there was not. Yes, there was not. There was nothing in the record, I'm sorry. But given all the other references to TGAL and the tie to TGAL Europe and the fact that GAL and TGAL talked about all their European operations and on past contracts that they performed upon, they actually had operations in Europe, it wasn't a leap for somebody with the experience of a contracting officer transcom to tie those together. I apologize. Okay, I think we're out of time, Mr. Mitchell. Subject to your questions, we'd like the judges to be adjourned. And I would like to turn to my co-defendant, counsel. I'm sorry. Okay, Mr. English. Please report. My name is Brad English and I represent the Pele International Auto Logistics. Much has been made in this case and this morning about the things that were not in the record before transcom when it made its award decision. And I'd like to spend my few moments pointing forth to the things that were. Starting with International's proposal, which listed a team of subcontractors that were to be part of, quote, team IAL. And among those subcontractors were Global Auto Logistics and Transglobal Auto Logistics, which were essentially proposed as one. The proposal identified their background and relationship between those two companies and also spoke generally about the background and business activities of each. On page A1152, I believe it is, they talk about Transglobal Auto Logistics' work with the U.S. dealing with shipment of privately owned vehicles. And it says, quote, in conjunction with European offices.  And the proposal also includes bios of key employees of these various subcontractors, including Kay Lester, who's the president of both Transglobal and Global Auto Logistics, and Joseph Vest, who is the general manager of the European branch. The European branch, of course, is the branch that we now know to be Transglobal Auto Logistics Europe. I don't think there's any dispute about that. But there's nothing in the record that expressly identifies Transglobal Auto Logistics Europe as a separate corporate entity. I don't believe there is. So when you talk about the European branch, you actually are talking about a separate corporate entity. And isn't the problem that your friend on the other side is posing is that the contracting officer had to be confident that all of the resources of the separate corporate entity were being proffered for purposes of this proposal. Right, Your Honor. It is that latter test. Are the resources of this separate corporate entity being pledged? And is the access of this European branch? I don't think that the record or the APA requires the contracting officer to specifically know that it was a separate corporation. But it's the resources. And it's the same resources of the European branch office that are managed by Joe Vets, who's identified in the proposal. The same resources pledged to the Allied contract and the Volkswagen contract, which is the two past performance references that the agency relied so heavily on. And in response to the evaluation notice, Transglobal specifically responded and mentioned Joseph Vets as being one of the people whose resources are pledged to the performance of the contract. And so I think on the basis of the record, that might not have been as articulate as it could have been in terms of identifying the direct corporate relationship. But there's certainly enough for the contracting officer to have confidence that the resources of this European branch are being pledged to the performance of this contract. Thank you. Okay. Thank you, Mr. England. Mr. Sullivan, you've got two minutes here. Thank you, Your Honor. The fact is that International did not provide the critical link between the description in the proposal of which subs were doing what in performance of the contract. And there's nothing that ties them to the past performance questionnaires that were submitted for TGAL-E to TGAL-Europe. Just submitting a past performance questionnaire for a company not mentioned in the proposal does not show how that company is going to be involved in the actual performance of the contract. And it doesn't meet the GAO standard. And to help the Court, I would respectfully refer you to the Health Net decision that's referred to in our briefs, a GAO decision from 2009. And in that case, the company, the Health Net, was challenging the award to a major contract award to Aetna, which had addressed the involvement of a number of Aetna subsidiaries in their proposal. But it turned out that the past performance information that Aetna had submitted were for a different Aetna entity. There was no showing that the past performance questionnaire entity would have had or would commit its resources or personnel or facilities to the contract. It's just like this. And, Your Honor, I would say that I'll finish by pointing this point out. The source selection official stands there and relies on what the staff submits to them. This is a billion-dollar contract that's been performed by one company for the past 15 years and performed very well, as the record shows. Now they're going to a brand-new entity that was formed in 2012. The major subcontractor upon which they rely here at Global was formed in 2013. And he or she wasn't told that the past performance questionnaire that they're really relying on is some unnamed entity down below. That's the problem here. There was no link. But shouldn't we assume that for the very reasons that you just state, that they were shifting from someone they were comfortable with, and it was a billion-dollar contract, that they did drill down into all these documents? Your Honor, I don't think you can assume it. They drilled down to a certain extent, but they didn't drill down as far as the TGAL Europe level came. And that was the whole ballgame on past performance. That's why the assumption becomes dangerous. And isn't HealthNet distinguishable because they were talking about a subcontractor that was going to fulfill only one small portion of the contract? Well, they did say it was small, but it's the link that is on point here, Your Honor, the failure to provide a link to the company that provides the past performance questionnaire information to the actual performance of the contract. And that's the fatal flaw here. Okay, thank you, Mr. Solomonoff. Thank you. Thank you, both counsels, all two counsel, the case has submitted.